IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | | |
|---|---|---|
| Kevin Potter, *et al.*, | : | |
| Plaintiff(s), | : | Civil No. 17-08478 (RBK/KMW) |
| v. | : | **OPINION** |
| David Newkirk, *et al.*, | : | |
| Defendant(s). | : | |

**Kugler,** United States District Judge:

**THIS MATTER** arises from defendant Cumberland County Sheriff's Department's ("CCSD") Motion for Preliminary Injunction (Doc. No. 15); plaintiffs Kevin Potter ("Mr. Potter") and Marguerite Potter's ("Ms. Potter," collectively "Plaintiffs") Cross Motion for the Imposition of Pre-Filing Injunctions and to Strike Document No. 15 (Doc. No. 17); defendants Cumberland County Prosecutor's Office ("CCPO") and Jon M. Reilly's ("Reilly") Motion to Dismiss Plaintiff's Complaint (Doc. No. 35), which CCSD joined as to Point II and III; defendants Donna L. Loose ("Ms. Loose") and George R. Loose's ("Mr. Loose," collectively "the Looses") Motion to Dismiss Plaintiffs' Complaint (Doc. No. 58); Plaintiffs' Motion to Amend Pleadings (Doc. No. 69); Plaintiffs' Motion to Prohibit CCSD From Joining ECF 58 (Doc. No. 71); defendant Bruce J. Duke LLC and Bruce J. Duke's Motion to Dismiss with Prejudice for Failure to State a Claim Upon which Relief can be Granted (Doc. No. 78); and Plaintiffs' Motion to Reset the Return Date of 78 to Its Initial Return Date of July 16, 2018 (Doc.

1

No. 79). For the reasons set forth below, Plaintiffs' Motion to Amend Pleadings (Doc. No. 69) is **DENIED** as futile. This Court does not have subject-matter jurisdiction over Plaintiffs' claims, and this case must be **DISMISSED**. The following motions are therefore **DISMISSED AS MOOT**: Doc. No. 17; Doc. No. 35; Doc. No. 58; Doc. No. 71; Doc. No. 78; and Doc. No. 79. Furthermore, CCSD's Motion for Preliminary Injunction (Doc. No. 15) is **GRANTED IN PART**.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

Plaintiffs have a long and storied history with the United States judicial system.[2] We will try to briefly illustrate Plaintiffs' status as frequent fliers of both the state and federal courts.

In March 2000, Plaintiffs were enjoined from filing new litigation in the federal court system in South Carolina. *Potter v. Mosteller*, Civ. No. 5:98-1158-22 (D.N.J. Mar. 22, 2000). Plaintiffs were described as "seasoned litigators with more trial experience than many attorneys" who had continuously and consistently "harass[ed] Defendants." *Id.* at 19.

In March 2005, Plaintiffs "conspired to advance [the] litigation as a blatant and transparent sham proceeding for the purpose of defrauding the insurers." *Potter v. Potter*, Civ. No. AMD 00-63, Mem. Opp. at 4, (D. Md. Mar. 28, 2005). Mr. Potter has sued his former neighbors, John and Ashley Sorantino, in at least 13 separate civil complaints in Cumberland, Cape May, and Atlantic Counties. Mr. Potter also filed at least 35 separate criminal complaints

---

[1] On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "accept all facts alleged in the complaint as true and construe the complaint in the light most favorable to the non moving party." *Flora v. Cty. Of Luzerne*, 776 F.3d 169, 175 (3d Cir. 2015). Accordingly, for purposes of the 12(b)(6) motions, the Court adopts and accepts as true the facts as pled in the Complaint and Amended Complaint.

[2] Federal Rule of Evidence 201 allows this Court to take judicial notice of an adjudicative fact. This includes the official records of prior court proceedings. *McPherson v. United States*, 392 Fed. App'x 938 (3d Cir. 2010).

against them. In September 2008, a jury trial awarded the Sorantinos $249,000 in damages for malicious prosecution by Mr. Potter. (CCSD Mot. PI at Ex. M.) Plaintiffs additionally brought suit against anyone even tangentially involved in these cases. (CCSD Mot. PI at Ex. O.)

After the verdict, Mr. Potter filed an amended complaint in the Atlantic County matter (CCSD Mot. PI at Ex. P.) On December 5, 2008, he sued the Sorantinos' counsel.[3] (*Id.* at Ex. Q.) On February 19, 2009, Mr. Potter filed a Chapter 7 bankruptcy petition, claiming that he had no assets. (*Id.* at Ex. R.) This petition included two additional complaints, but concluded in 2015. *In re Potter*, No. 3:09-BK01080-PMG (M.D. Fla. 2009). On April 5, 2011, the Trustee filed a Motion in the Bankruptcy Court to compel Plaintiffs to vacate 13104 West Buckshutem Road, Millville, N.J. ("the Property"). *Id.* at Doc. No. 48. On July 11, 2011, United States Bankruptcy Court Judge Jerry A. Funk granted the Trustee's motion and ordered that the Plaintiffs vacate the Property within 30 days of the order and declared that the order "shall be enforced through the Court of the State of New Jersey."[4] *Id.* at Doc. No. 96. Mr. Potter then sued the Trustee, the

---

[3] He did so again on March 6, 2009. (CCSD Mot. PI at Ex. Q.) Additionally, the cases discussed above are but examples of Plaintiffs' litigious history. Mr. Potter has brought suit *pro se* dozens of other times. *See, e.g.*, *Potter v. Brown*, CUM0SC-640-89 (N.J. Super. Ct. May 25, 1989); *Potter v. State Farm Ins. Co.*, CUM-SC-1653-89 (N.J. Super. Ct. May 25, 1989); *Potter v. Hanover Ins. Co.*, CUM-SL-358-90 (N.J. Super. Ct. Mar. 3, 1990); *Potter v. Montgomery*, CUM-SL-154-93 (N.J. Super. Ct. Feb. 4, 1993); *Potter v. Bob's Auto Supplies, Inc.*, CUM-SC-140-94 (N.J. Super. Ct. Jan. 26, 1994); *Potter v. Espisito*, 94 CU 4475 (N.J. Super. Ct. Sep. 13, 1994); *Potter v. Allstate Insurance Co.*, 94 CU 4621 (N.J. Super. Ct. Sep. 16, 1994); *Potter v. Addis*, 95 CU 5795 (N.J. Super. Ct. Nov. 6, 1995); *Potter v. McKacken*, BER-SC-7045-95 (N.J. Super. Ct. Nov. 15, 1995); *Potter v. Roe*, CUM-SL-1090-97 (N.J. Super. Ct. June 6, 1996); *Potter v. Roe*, ATL-SL-1929-96 (N.J. Super. Ct. June 10, 1996); *Potter v. Addis*, 96 CU 5483 (N.J. Super. Ct. Nov. 25, 1996); *Potter v. Watchung Spring Water*, CUM-SL-51-97 (N.J. Super. Ct. Jan. 4, 1999); *Potter v. Savoca*, CUM-SL-044-99 (N.J. Super. Ct. Jan. 14, 1999); *Potter v. Potter*, 99 CU 5985 (N.J. Super. Ct. Dec. 22, 1999) (suing, again, Ms. Potter, amongst others); *Potter v. Crew Towing*, CUM-SL-336-00 (N.J. Super. Ct. Mar. 23, 2000). The Court notes that these are but a *small* sample of Plaintiffs' exploits.

[4] Importantly, Plaintiffs try to grossly mischaracterize Judge Funk's orders in this case in other ways. In order to avoid a serious miscarriage of justice, this Court must clearly exercise—and

Trustee's attorney and his law firm, the CCPO, Mr. Reilly, and the clerks who worked in the bankruptcy office in Jacksonville, FL. *See, e.g.*, *Potter v. Altman*, Civ. No. 11-04197 (D.N.J. 2011).

This case arises from what happened next. Mr. Potter alleges that on September 1, 2011, the bankruptcy court terminated his petition and thus the Property belonged to him, despite the eviction order by the United States Bankruptcy Court for the Middle District of Florida pursuant to the Trustee's request. (Am. Compl. at 19.) On October 19, 2011, Ms. Potter also filed for bankruptcy, claiming assets and liabilities in the range of $0-50,000. (*Id.* at 20; *see* Pl. Aff. (Doc. No. 81) at Ex. Q.) Plaintiffs assert that they then immediately served notice that same day of this bankruptcy filing on every defendant in this case (there are 66 named defendants).[5] (Pl. Aff. at 12-13.) On October 20, 2011, "all of the defendants identified in the caption of this case criminally and maliciously conspired to take the law into their own hands by spearheading an armed home/business invasion." (Am. Compl. at 22.) Plaintiffs allege hundreds of thousands of dollars in damages stemming from the "outright theft/vandalism, unauthorized access, and distribution of plaintiffs['] property." (*Id.* at 25; Pl. Aff. at 17.)

Plaintiffs subsequently brought claims for: Defendants' Willful Violation of Title 11 U.S.C. § 362 *et seq.* (Count One); Conversion (Count Two); Trespass (Count Three); Tortious Interference With Contractual Relations (Count Four); Unlawful Interference With Prospective Economic Advantage (Count Five); Malicious Prosecution (Count Six); and Breach of Contract (Count Seven). Given Plaintiffs' litigation history, this Court ordered Plaintiffs to submit

---

emphasize the importance of—its ability to take judicial notice of various court's official records. *McPherson*, 392 Fed. App'x 938.

[5] No matter how implausible this may seem, the Court again emphasizes that it must take the facts plead by Plaintiffs as true.

competent evidence to the Court regarding Plaintiffs' claims.[6] (Doc. No. 77.) Plaintiffs submitted an affidavit and exhibits on June 20, 2018. (Doc. Nos. 81, 82.)

## II. LEGAL STANDARD

### A. Subject-Matter Jurisdiction

There are two primary sources of subject-matter jurisdiction for federal district courts. The first is diversity jurisdiction. This form of jurisdiction permits individuals to bring claims in federal court where the claim exceeds $75,000 *and* the parties are citizens of different states. *See* 28 U.S.C. § 1332. The second is federal-question jurisdiction. Under federal question jurisdiction, a litigant—regardless of the value of the claim—may bring a claim in federal court if it arises under federal law, including the United States Constitution. *See* 28 U.S.C. § 1331.

Furthermore, 28 U.S.C. § 1367 provides for supplemental jurisdiction in federal courts. Supplemental jurisdiction allows a federal court to adjudicate a claim over which it does not have independent subject-matter jurisdiction, on the basis that the claim is related to a claim over which the federal court does have independent jurisdiction.

Because subject-matter jurisdiction is non-waivable, courts have an independent obligation to satisfy themselves of jurisdiction if it is in doubt. *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 76-77 (3d Cir. 2003) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. V. Doyle*, 429 U.S. 274, 278 (1977)). A necessary corollary is that a court can raise *sua sponte* subject-matter jurisdiction concerns. *Nesbit*, 347 F.3d at 77.

---

[6] The Order specifically required that Plaintiffs present competent evidence that: (1) Plaintiffs timely complied with all notice provisions of the New Jersey Tort Claims Act as to all state law claims against all public entities or public employees; (2) Plaintiffs properly and timely served notice of any alleged bankruptcy stay on all named defendants; (3) the property at issue was owned at all relevant times by Plaintiffs; and (4) the alleged raid was not a proceeding taken pursuant to an order of a court of competent jurisdiction. (Doc. No. 77 at 3.)

## B. Vexatious Litigant Standard

Pursuant to the All Writs Act, 28 U.S.C. § 1651(a), a district court may enter a pre-filing injunction "to preclude abusive, groundless and vexatious litigation." *Brow v. Farrelly*, 994 F.2d 1027, 1038 (3d Cir. 1993). "When a district court is confronted with a pattern of conduct from which it can only conclude that a litigant is intentionally abusing the judicial process and will continue to do so unless restrained, we believe it is entitled to resort to its power of injunction and contempt to protect its process." *Abdul-Akbar v. Watson*, 901 F.2d 329, 333 (3d Cir. 1990)). "Courts have uniformly sanctioned litigants who attempt to relitigate issues already decided against [them] . . ." *Dunleavy v. Gannon*, 2012 WL 259382 (D.N.J. Jan. 26, 2012) (citing *Napier v. Thirty or More Unidentified Fed. Agents, Employees or Officers*, 855 F.2d 1080 (3d Cir. 1988)).

However, "the District Court should not restrict a litigant from filing claims absent exigent circumstances, such as a litigant's continuous abuse of the judicial process by filing meritless and repetitive actions." *Farrelly*, 994 F.2d at 1037. Moreover, "[i]f the circumstances warrant the imposition of an injunction, the District Court must give notice to the litigant to show cause why the proposed injunctive relief should not issue." *Id.* Finally, "the scope of the injunctive order must be narrowly tailored to fit the particular circumstances of the case before the District Court." *Id.*

## III. DISCUSSION

### A. Plaintiffs' Motion To Amend Is Denied.

"[A] party may amend its pleading only with the opposing party's written consent or the court's leave," but "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a). There is no evidence that *this* motion was unduly delayed, in bad faith, had a dilatory

motive, or caused unfair prejudice, though, as we will discuss, it is futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

As we delve into below, we do not have jurisdiction over the claims in the Amended Complaint. As such, the Motion to Amend must be denied because it is futile.

**B. This Court Does Not Have Subject-Matter Jurisdiction Over Plaintiffs' Claims Because Plaintiff Failed To Properly Plead A Federal Claim Upon Which Relief Can Be Granted And There Is No Diversity.**

Upon initial glance, it may appear as if Plaintiffs properly plead a federal question—they allege that all the defendants violated the 11 U.S.C. § 362 automatic stay of Ms. Potter's estate by participating in a raid of her property the day after she filed her bankruptcy petition. (*See* Am. Compl.) The automatic stay contention is, however, improperly plead.

A claim arising from an alleged willful violation of § 362(k) is within the exclusive jurisdiction of the Bankruptcy Court. *In re Aleckna*, 543 B.R. 717, 719-20 (M.D. Pa. 2016) (citing *In re Roman-Perez*, 527 B.R. 844, 852 (Bankr. D.P.R. 2015)). As such, Plaintiffs' 11 U.S.C. § 362(k) claim must be properly plead in the Bankruptcy Court—this Court only has appellate jurisdiction over such a claim.

Because the federal vehicle for Plaintiffs' Complaint is not cognizable, this Court cannot exercise jurisdiction over Plaintiffs' remaining claims. They are New Jersey tort claims concerning non-diverse parties, and therefore may properly be brought in New Jersey state court, assuming, of course, that they are not vexatious and malicious, as will be discussed below.

**C. Plaintiffs Preliminarily Qualify As Vexatious Litigants.**

Plaintiffs' serial complaints—dozens in both federal and state courts up and down the Eastern seaboard—and voluminous filings make out a preliminary showing of abuse of the

judicial system. Plaintiffs' repeated attempts to create new controversies by suing the same defendants repeatedly—like Mr. Reilly, the CCPO, the Sorantinos, and more—and wantonly disregarding past judgments[7] appear to this Court to be vexatious and, indeed, repetitive. Plaintiffs are not entitled to convert the judicial system into a means for harassment or fraud. *Abdul-Akbar*, 901 F.2d at 333 ("When a district court . . . can only conclude that a litigant is intentionally abusing the judicial process and will continue to do so unless restrained, we believe [the court] is entitled to resort to its power of injunction and contempt to protect its process.").

As a result, Plaintiffs will be required to show cause within twenty days of the order accompanying this opinion why their pattern of conduct, which has forced the expenditure of dizzying amounts of judicial and legal resources, does not justify a tailored pre-filing injunction that provides the following:

1. Without prior leave of this Court, Mr. Potter and Ms. Potter should be prohibited, when proceeding *pro se*, from filing any lawsuits against any of the Defendants or others not yet named relating to the Property (13104 West Buckshutem Road, Millville, N.J.);

2. Leave of Court will be freely granted upon Plaintiff showing through a properly filed petition that a specific proposed filing (i) can survive a challenge under Rule 12 of the Federal Rules of Civil Procedure and (ii) is not barred by principles of claim or issue preclusion;

3. Plaintiff must attach a copy of the pre-filing injunction to any subsequent *pro se* lawsuit that relates to the Property or bankruptcy or foreclosure proceedings thereupon; and

4. The injunction shall not apply to the filing of timely notices of appeal of any decision rendered by this Court in this action, nor shall it apply to the cases that Mr. Potter and Ms. Potter have already filed.

---

[7] Including mischaracterizing and misrepresenting those judgments to this Court.

### D. The Remaining Motions Are Dismissed As Moot.

Because this Court does not have subject-matter jurisdiction over this case, the outstanding motions—Plaintiffs' Cross Motion for the Imposition of Pre-Filing Injunctions and to Strike Document No. 15 (Doc. No. 17); CCPO and Mr. Reilly's Motion to Dismiss Plaintiffs' Complaint (Doc. No. 35); the Looses' Motion to Dismiss Plaintiffs' Complaint (Doc. No. 58); Plaintiffs' Motion to Prohibit CCSD From Joining ECF 58 (Doc. No. 71); defendant Bruce J. Duke LLC and Bruce J. Duke's Motion to Dismiss with Prejudice for Failure to State a Claim Upon which Relief can be Granted (Doc. No. 78); and Plaintiffs' Motion to Reset the Return Date of 78 to Its Initial Return Date of July 16, 2018 (Doc. No. 79)—are hereby dismissed as moot.

## IV. CONCLUSION

For the reasons discussed above, Plaintiffs' Motion to Amend Pleadings (Doc. No. 69) is **DENIED**. This Court does not have subject-matter jurisdiction to hear Plaintiffs' claims, and this case must be **DISMISSED**. The following motions are therefore **DISMISSED AS MOOT**: Doc. No. 17; Doc. No. 35; Doc. No. 58; Doc. No. 71; Doc. No. 78; and Doc. No. 79. Additionally, CCSD's Motion for Preliminary Injunction (Doc. No. 15) is **GRANTED IN PART**.

Dated:     07/03/2018                                                     s/Robert B. Kugler
                                                                          ROBERT B. KUGLER
                                                                          United States District Judge