NOT FOR PUBLICATION

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

_____

POTTER, et al.,

          Plaintiffs,

          v.

NEWKIRK, et al.,

          Defendants.

_____

:
:
:
:
:
:
:
:
:
:
:

Civil No. 17-08478 (RBK/KMW)

**OPINION**

**KUGLER**, United States District Judge:

    Presently before this Court are Defendants Douglas J. Grant, Landis Title Corp., Donna and George Loose,  Bruce J. Duke LLC, Cumberland County Prosecutor's Office, and Vitality Group, LLC., Motions to Dismiss under F.R.C.P. 12(b)(6); Defendants Cumberland County Prosecutor's Office and Bruce J. Duke, LLC., Motion to Retroactively Annul the automatic stay; and Plaintiffs Kevin Potter and Marguerite Potter's Motion to Strike Doc. No. 15 and to Impose Pre-Filing Injunctions. (Doc. No. 101, 121, 123–126, 128, 131). For the reasons detailed herein, Defendants' motions are GRANTED in part and DENIED in part, and Plaintiffs' motions are DENIED.

## I.    BACKGROUND

    Plaintiff Kevin Potter and Marguerite Potter—a mother and son duo—are frequent fliers of both the state and federal courts. In fact, it was Plaintiffs proclivity toward litigation which

ultimately led to the current dispute. To provide context for the case at bar, we will briefly recount the genesis of this dispute and the underlying litigation.[1]

### A. Genesis of the Underlying Dispute

Plaintiff Kevin Potter ("Kevin Potter") instituted various lawsuits against his former neighbors, Nathan Van Embden, and John and Ashley Sorantino. (Doc. No. 15, Brief at ¶ 5–7). Initially, the litigation persisted between Kevin Potter and Nathan Van Embden. (*Id.* at ¶ 8). However, on or around August of 2005, the Sorantino family was dragged into court after Kevin Potter filed three criminal complaints against John and Ashley Sorantino over a verbal altercation. (*Id.* at ¶ 9). Shortly thereafter, on September 6, 2005, Mr. Potter filed an additional 5 criminal complaints against them. (*Id.*). Only 10 days later, on September 16, Mr. Potter filed a civil lawsuit against the Sorantinos claiming ownership of their property by adverse possession. (*Id.* at ¶ 10).

On September 20, 2005, the Sorantinos attempted to erect a wooden fence between their property and Mr. Potters. (*Id.* at ¶11). This resulted in Mr. Potter filing another 20 complaints against John and Ashley Sorantino in addition to 25 related criminal complaints against anyone hired by Sorantinos to erect the fence. (*Id.*). Every state trooper and state trooper station commander who was called to the scene was also thrown into the complaint for good measure. (*Id.*).

On December 15, 2005, Mr. Potter amended his civil complaint against John and Ahsley Sorantino; it spanned 49 pages and included 19 causes of action. (*Id.* at ¶ 12). In response, the Sorantinos filed a counterclaim against Mr. Potter for both civil and criminal malicious prosecution based on the 30 criminal complaints he filed as well as the civil lawsuit. (*Id.* at ¶ 13).

---

[1] Federal Rule of Evidence 201 allows this Court to take judicial notice of an adjudicative fact. This includes the official records of prior court proceedings. *McPherson v. United States*, 392 Fed. App'x 938 (3d Cir. 2010).

On September 8, 2008, the lawsuit between Mr. Potter and the Sorantinos was tried by a jury. (*Id.* at ¶ 17). And 11 days later, on September 19, 2008, the jury awarded the Sorantinos $249,000 in damages, including verdicts in their favor for their malicious prosecution claims against Mr. Potter. (*Id.*). Just ten days following the verdict, Mr. Potter transferred ownership of his Buckshutem Road property to Delmarva Enterprises for $100. (*Id.* at ¶ 18). Delmarva Enterprises is a sole proprietorship owned by Marguerite Potter, Mr. Potter's mother. (*Id.*).

### B.  Bankruptcy Proceedings

On February 19, 2009, Kevin Potter filed a Chapter 7 Bankruptcy petition in the Bankruptcy Court for the Middle District of Florida. (*Id.* at ¶ 22). Kevin Potter submitted his petition under penalty of perjury and claimed that he had no assets and that his property 13104 West Buckshutem Road, Millville, New Jersey, had been deeded to Delmarva Enterprises. (*Id.*). On May 21, 2009, the Chapter Seven Trustee appointed in Kevin Potter's bankruptcy case filed an adversary proceeding to set aside as fraudulent the pre-petition transfer of his West Buckshutem property to his mother. (Case No. 3:09-bk-0245, Doc No. 1). This petition was granted and the Bankruptcy Court entered judgment avoiding that transfer. (*Id.* 108–109). The Bankruptcy Court found the property was part of the bankruptcy estate to be administered by the trustee and that Marguerite Potter and Delmarva Enterprises had no interest in or lien claim on the property. (Doc No. 124, Exhibit D).

On April 5, 2011, the Trustee filed a motion in the Bankruptcy Court to compel Plaintiffs to vacate 13104 West Buckshutem Road, Millville, N.J. (Case No. 3:09-bk-1080, Doc No. 48). On July 11, 2011, United States Bankruptcy Court Judge Jerry A. Funk granted the Trustee's motion and ordered the Plaintiffs to vacate the property within 30 days of the order. (*Id.*)

Following the order for the property to be sold and vacated, Mr. Potter filed a complaint on July 22, 2011 in the District of New Jersey, naming as defendants, the bankruptcy trustee, Robert Altman, the trustee's attorney, Allan Wulberm and his law firm, the Cumberland County Prosecutor, Jon M. Reilly as well as the clerks who work in the bankruptcy office in Jacksonville, Florida. *See, e.g., Potter v. Altman*, Civ. No. 11-04197 (D.N.J. 2011).

### C.  Current Case

Mr. Potter failed to comply with the Bankruptcy Court's order to vacate the property and consequently, on August 11, 2011, the bankruptcy trustee filed an ejectment action in the Superior Court of New Jersey. (Doc. No. 15, Brief at ¶ 30). On October 19, 2011—the day before the scheduled eviction—Marguerite Potter filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the District of New Jersey. (*Id.* at ¶ 34). The Potters were evicted from the property on October 20, 2011. (Am. Compl. at ¶ 47). Marguerite Potter's bankruptcy was terminated on November 23, 2011. (Case No. 11-40237, Doc No. 16).

Six years later, on October 17, 2017, the Potters brought the current action alleging that the New Jersey property was part of Marguerite Potter's Chapter 13 bankruptcy estate and that the defendant's violated the automatic stay issued pursuant to 11 U.S.C. § 362(a)(1). (Doc. No. 1, Compl. at ¶ 1–6). The Complaint named over 60 defendants and alleged that Plaintiffs served notice on every defendant the same day that Marguerite Potter filed for Chapter 13 bankruptcy. (Id. at ¶ 7). A slew of claims was levied against the defendants, all arising from the ejectment action. Specifically, Plaintiff brought claims for: (1) willful violation of Title 11 U.S.C. § 362; (2) conversion; (3) trespass; (4) tortious interference with contractual relations; (5) unlawful interference with prospective economic advantage; (6) malicious prosecution; (7) and breach of contract. (Id. at ¶ 29–127).

4

Given Plaintiffs' litigation history, this Court ordered Plaintiff to submit competent evidence to the Court regarding Plaintiff's claims. (Doc. No. 77). Plaintiffs submitted an affidavit and exhibits on June 20, 2018. (Doc. Nos. 81, 82). This Court sua sponte concluded that it lacked subject matter jurisdiction over the Potter's claim brought pursuant to 11 U.S.C. § 362(k) for a willful violation of the automatic bankruptcy stay. (Doc. No. 84, 85). We determined that such a claim was in the exclusive jurisdiction of the Bankruptcy Court and declined to exercise supplemental jurisdiction. (*Id.*). We also denied Plaintiff's motion to amend the pleadings and in ruling on the motion for a preliminary injunction, cited the Potter's abusive litigation history and directed the Potters to show cause why they should not be enjoined from filing any further lawsuits in New Jersey without the Court's prior approval. (*Id.*). The Potters filed a timely post-judgment motion for relief and a motion to compel this Court to transfer the matter to the Bankruptcy Court. (Doc No. 86, 88). We denied the Potter's post judgment motion and motion to compel. (Doc No. 91). Plaintiff's appealed. (Doc. No. 91).

### D.  Appeal

The Third Circuit vacated our judgment and concluded we erred in sua sponte dismissing the complaint for lack of subject matter jurisdiction and denying the motion for reconsideration. (Doc. No. 96, Opinion). It also vacated this Court's decision to deny the Potters' motion to compel transfer of the matter to the Bankruptcy Court. (*Id.*).

Of note, especially for purposes of the present motion, was the Third Circuit's conclusion that the part of the Potters' claim that was premised on defendants violating the automatic stay by seizing the New Jersey property presented an insubstantial federal question. (*Id.*). It reasoned that "[t]the mainstay of the Potters' claim-that the defendants violated the automatic stay by seizing the New Jersey property-is foreclosed by the orders of the Florida Bankruptcy Court . . . See Hannis

Distilling Co. v. Baltimore, 216 U.S. 285, 288 (1910) (noting that a claim is insubstantial if previous decisions 'foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy').". (*Id.*) Thus, the only claim that presented a substantial federal question under § 362 was the allegation "that defendants violated the automatic stay with respect to personal property belonging only to Marguerite Potter." (*Id.*)

On remand, Defendants' filed Motions to Dismiss the Complaint and Retroactively Annul the Bankruptcy Stay. (Doc No. 121, 123, 124, 125, 126, 128, and 131).

## II.   LEGAL STANDARD

### A.  Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted.  When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a complaint survives a motion to dismiss if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To make this determination, courts conduct a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010).  First, the Court must "tak[e] note of the elements a plaintiff must plead to state a claim."  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the Court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 680). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice." *Id.* (quoting *Iqbal*, 556 U.S. at 678).  Finally, "when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679).  A complaint cannot survive a motion to dismiss where a court can only infer that a claim is merely possible rather than plausible. *Id.*

### i.  Four Corners Doctrine and Its Exceptions

Federal Rule of Civil Procedure 12(b) specifically circumscribes material that a court may consider to dismiss by stating "if, on a motion asserting the defense number (6) to dismiss, . . . matters outside the pleading are presented and not excluded by the court, the motion shall be treated as one for summary judgment." Fed. R. Civ. P. 12(b)(6). As such, a court generally may not "consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). There are two exceptions to this general rule, however. Documents which are integral to the complaint and documents of which a court may take judicial notice. *In re Merck Co., Inc., Sec., Derivative & "Erisa" Litig.*, No. CV 05-1151 (SRC), 2006 WL 8460903, at *2 (D.N.J. Jan. 20, 2006).

### 1.  Documents Integral to the Complaint

The first exception to the four corners doctrine allows a court to consider documents that can be considered integral to the referencing complaint. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). Integral documents are defined as documents which create rights or duties that are the basis for the Complaint. *In re Merck Co., Inc., Sec., Derivative & "Erisa" Litig.*, No. CV 05-1151 (SRC), 2006 WL 8460903, at *2 (D.N.J. Jan. 20, 2006). Put differently, this exception encompasses situations where the plaintiff's claim depends on the contents of a document. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). The quintessential

7

example of this exception is a breach of contract action; in such cases, the contract would be considered integral and a defendant filing a motion to dismiss under 12(b)(6) would be permitted to attach the contract as an exhibit, which would then be considered for its truth by the court. *In re Merck Co., Inc., Sec., Derivative & "Erisa" Litig*., No. CV 05-1151 (SRC), 2006 WL 8460903, at *2 (D.N.J. Jan. 20, 2006).

The rationale underlying this exception is that "the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated '[w]here the plaintiff has actual notice . . . and has relied upon these documents in framing the complaint.'" *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). Indeed, the failure to consider documents that plaintiffs have relied on in framing the complaint but failed to attach "raise the countervailing concern that 'a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied.'" *Hughes v. United Parcel Serv., Inc.*, 639 F. App'x 99, 103 (3d Cir. 2016).

### 2. Judicial Notice

The second exception to the four corners doctrine allows a court to take judicial notice of public records. *Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000). Federal Rule of Evidence 201 is the cornerstone of judicial notice, and it states:

Judicial Notice of Adjudicative Facts - F.R.E. 201(b) Kinds of facts. A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

When a court judicially notices a document, it "may only be considered for the limited purpose of showing that a particular statement was made by a particular person," and "not for the truth of the matters purportedly contained within those documents." *Oran* at 289 (quoting *Kramer v. Time Warner*, 937 F.2d 767, 774 (2d Cir. 1991)). If a court were to consider and

judicially notice documents for their truth it would be, in essence, authorizing a trial by public documents, impermissibly expanding the scope of a Rule 12(b)(6) motion. *In Re Viropharma, Inc.*, 2003 WL 1824914 at *1 (E.D.Pa. 2003).

### B. Motion to Strike

Federal Rule of Civil Procedure 12(f) provides that "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A court possesses considerable discretion in disposing of a motion to strike under Rule 12(f). *River Road Devel. Corp. v. Carlson Corp.*, F. Supp., No. 89-7037, 1990 WL 69085 at *2 (E.D.Pa. 23 May 1990). Motions to strike, however, are "not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties or if the allegations will confuse the issues." *Id.*

### C. Pre-Filing Injunctions

A pre-filing injunction is an extreme remedy which must be "narrowly tailored and sparingly used." *Gonzalez v. Feiner*, 131 F. App'x 373, 378 (3d Cir. 2005). These injunctions are designed to permit a district court to issue "injunctions to preclude abusive, groundless and vexatious litigation." *Brow v. Farrelly*, 994 F.2d 1027, 1038, 28 V.I. 345 (3rd Cir. 1993). Such an injunction only allows a plaintiff to file an action upon obtaining leave of court and meeting other requirements described in the prefiling injunction order. *Brown v. City of Phila.*, No. 05-4160, 2009 U.S. Dist. LEXIS 31947 at *48 (E.D. Pa. Apr. 14, 2009).  The power to issue an injunction to restrict the filing of meritless pleadings emanates from the All Writs Act. *In re Packer Ave. Assocs.*, 884 F.2d 745 (3d Cir. 1989).

### III.   DISCUSSION

Plaintiffs move to strike Defendant Cumberland County Sheriff's Department Motion for Preliminary Injunction and to impose pre-filing injunctions against them. Likewise, Plaintiffs' complaint sets forth seven causes of action: (1) violation of the automatic stay under 11 U.S.C. § 362(k); (2) conversion; (3) trespass; (4) tortious interference with contractual relations; (5) unlawful interference with prospective economic advantage; (6) malicious prosecution; and (7) breach of contract. Each issue with be addressed in turn.

### A.  Plaintiffs' Motions to Strike and Impose Pre-Filing Injunction are Denied

The cases are legion which set forth the basic principle that a motion to strike under Rule 12(f) applies only to pleadings, not motions and related documents. *Murphy v. Yates*, No. 05-2552, 2005 U.S. Dist. LEXIS 18553 at *4 (E.D. Pa. Aug. 8, 2005); *see also, e.g., Granger v. Gill Abstract Corp.*, 566 F. Supp. 2d 323, 335 (S.D.N.Y. 2008).

Rule 7(a) defines pleadings as "(1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer." Fed. R. Civ. P. 7(a). The Cumberland County Sheriff's Department motion for a preliminary injunction is not a pleading. Therefore, Plaintiff's motion to strike this motion is denied.

Plaintiffs argue that pre-filing injunctions should be imposed against the Sheriff's Department and its counsel to prevent Plaintiffs from sustaining further irreparable harm and prejudice to their substantive legal rights.

A district court may enjoin a litigant from future filings so long as the injunction complies with three requirements: (1) the litigant must be continually abusing the judicial process; (2) the litigant must be given notice of the potential injunction and an opportunity to

oppose the court's order; and (3) the injunction must be narrowly tailored to fit the specific circumstances of the case. *Grossberger v. Ruane*, 535 F. App'x 84, 86 (3d Cir. 2013).

Plaintiffs' motion to impose pre-filing injunctions against Defendant Sheriff's Department and its counsel is utterly devoid of any factual support. Plaintiffs make bald accusations that counsel and Cumberland County Sheriff's Department have a history of filing fraudulent, frivolous, and vexatious requests for legal relief through the state of New Jersey, and in both State and Federal court. Yet Plaintiffs provide no support for these allegations. Instead, they contends that this bald accusation coupled with their characterization of Defendant's motion for a preliminary injunction as a "fraudulent, frivolous, and vexing seven-hundred and sixteen page spurious motion" is enough to show that Defendants are continually abusing the judicial process. Given that Plaintiffs have not provided even a scintilla of evidence to support their motion for pre-filing injunctions, it is denied.

### B.  Documents Integral to the Complaint[2]

Defendants effectively request that we consider Plaintiffs' "bankruptcy petitions . . . and the subsequent litigation and transactions" for purposes of their motion to dismiss. (Doc. No. 121, Brief). This is an overly broad request and would essentially convert this motion into one for summary judgment. We decline to consider all these documents and will consider only those that Plaintiffs rely on in framing the complaint.

In framing the claim under § 362(a)(1) for violation of the automatic stay, Plaintiffs allege that "an out of state Trustee hired counsel in the state of New Jersey to institute a state

---

[2] Defendants George and Donna Loose ask us to issue an order discharging the Buckshutem property from Plaintiffs *lis pendens* claim, which operates as a cloud on the title. Plaintiffs do not mention the filing of a *lis pendens* with the Cumberland County Clerk's Office in the complaint, nor do we find the documents Defendants attach to their Motion to Dismiss integral to Plaintiffs' complaint. As such, we decline to consider these documents and will not rule on this Motion as it is not a claim in Plaintiff's complaint.

court case absent cause, justification or any other legal authority, to acquire possession of plaintiff Kevin Potter former deed residence from plaintiff Delmarva Enterprise." It is Plaintiffs contention, then, that this state court case and its subsequent proceedings violated the automatic stay.

In *Hughes*, the Third Circuit upheld the District Court's consideration of a Collective Bargaining Agreement when it dismissed the plaintiff's complaint. *Hughes v. United Parcel Serv., Inc.*, 639 F. App'x 99, 103 (3d Cir. 2016). The District Court determined that the plaintiff's claim arose out of their employment relationship, which was governed by the CBA, and therefore the CBA was integral to the complaint. *Hughes v. United Parcel Serv., Inc.*, No. CIV.A. 14-3822, 2015 WL 1021312, at *3 (E.D. Pa. Mar. 6, 2015), aff'd, 639 F. App'x 99 (3d Cir. 2016).

The reasoning in *Hughes* applies with equal force here. Plaintiffs' claims arise out of the "armed home/business invasion," which is governed by the "state court case . . . to acquire possession of Plaintiff Kevin Potter former deeded residence." In other words, Plaintiffs allege the state court case to acquire their property constituted a "judicial proceeding against the debtor" in violation of § 362(a)(1). Thus, to determine whether Plaintiffs plausibly state a claim for relief, we must consider the documents attached by Defendants that relate to this state court case.  Indeed, the failure to consider such documents would allow plaintiffs to play fast and loose with the court by failing to attach documents which show that their claims are legally deficient.

The only relevant document Defendants attach is the Florida Bankruptcy Court order entered July 11, 2011. (Doc. No. 121, Exhibit B). The Court granted Trustee Robert Altman's motion to compel Kevin and Marguerite Potter to vacate the premises and declared its order shall be enforced through the courts of the state of New Jersey. (*Id.*). The Court's grant was based on

12

its previous findings that neither Delmarva nor Marguerite Potter had an interest in the property because it was the property of Kevin Potter's bankruptcy estate. (*Id.*).

We take judicial notice of the fact that Trustee Robert Altman filed an ejectment action in the Superior Court of New Jersey against Kevin and Marguerite Potter on August 16, 2011.[3]

### C.  Violation of the Automatic Stay

As the Third Circuit noted, the mainstay of the Potters' claim—that the defendants violated the automatic stay by seizing the New Jersey property—is foreclosed by the orders of the Florida Bankruptcy Court and thus presents an insubstantial federal question. Accordingly, we need only address the allegation that Defendants violated the automatic stay by seizing Marguerite Potter's personal property.[4]

Before addressing the parties' arguments, we provide a brief overview of § 362(a)(1), (3), and § 362(k).

### i.  Automatic Stay

§ 362(a)(1) provides that a petition filed under Chapter 13 "operates as a stay, applicable to all entities, of the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(1). This subsection has been interpreted broadly to stay "all pre-petition actions against the debtor, not merely acts to

---

[3] Courts can take judicial notice of public records, including court filings. *McPherson v. United States*, 392 Fed. App'x 938 (3d Cir. 2010).

[4] To the extent that the complaint can be read as Plaintiff Kevin Potter asserting a claim for violation of the automatic stay with respect to Marguerite Potter's personal property, we conclude he lacks standing. *Radogna v. Williams Twp.* (*In re Radogna*), 331 F. App'x 962, 965 (3d Cir. 2009) (holding a *pro se* litigant did not have standing to assert that a township zoning officer violated the automatic stay in his mother's bankruptcy).

obtain property of the debtor." *Borman v. Raymark Indus., Inc.*, 946 F.2d 1031, 1036 (3d Cir. 1991).

For instance, in *Bartlette* the Third Circuit affirmed the District Court's dismissal of former Kmart employee's complaint as void under 11 U.S.C. § 362(a)(1). *Bartlette v. Kmart Corp.*, 312 Fed. Appx. 441, 441 (3d Cir. 2008). The employee filed a complaint against Kmart alleging that she was improperly terminated under various federal laws. *Id.* However, before she filed the complaint, Kmart had filed a petition for Chapter 11 bankruptcy. *Id.* Thus, the employee's filing of the complaint was in direct violation of the automatic stay and consequently void as a matter of law. *Id.* at 442; *see also In re Johnson*, 601 B.R. 365, 377–78 (Bankr. E.D. Pa. 2019) (concluding the purchaser of property at a sheriff's sale violated the automatic stay when he attempted to exercise his secured interest by permanently disposing of substantially all of the debtor's personal property).

When the automatic stay has been violated, the relevant provision is 11 U.S.C. § 362(k)(1). It provides "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). For a plaintiff to prove violation of an automatic stay, he must show that (1) the offending party violated the stay; (2) the violation of the stay was willful; and (3) the willful violation must have been caused debtor some injury. *Renzulli v. Ullman* (In re Renzulli), Nos. 15-14918-ABA, 15-01983-ABA, 2015 Bankr. LEXIS 4439 at *(Bankr. D.N.J. Nov. 23, 2015).

A willful violation does not require a "specific intent" to violate the automatic stay. *In re Atl. Bus. & Cmty. Corp.*, 901 F.2d 325, 329 (3d Cir. 1990). Rather, for a violation to be "willful" the defendant needs to know of the stay and the conduct that violates the automatic stay must be

intentional. *Id.* Knowledge of the existence of the bankruptcy case is treated as knowledge of the automatic stay. *In re Traversa*, 585 B.R. 215, 220 (Bankr. E.D. Pa. 2018). Whether the party believes in good faith that it had a right to the property is not relevant to whether the act was willful. *Cuffee v. Atl. Bus. & Cmty. Dev. Corp.* (In re Atl. Bus. & Cmty. Corp.), 901 F.2d 325, 329 (3d Cir. 1990).

A creditor will not have knowledge of the bankruptcy case if they are not listed in the Debtor's bankruptcy schedule nor provided for in the creditor mailing matrix. *In re Thomas*, 497 B.R. 188, 202 (Bankr. E.D. Pa. 2013). In *In re Thomas*, the Court dismissed the debtor's claim for willful violation of the automatic stay because the debtor failed to allege in the Complaint that Wachovia had any knowledge of the Debtor's bankruptcy filing. *Id.* Nor could the debtor show that Wachovia received notice of the bankruptcy case because it was not listed in the debtor's bankruptcy schedule nor provided for in the creditor mailing matrix. *Id.*

### ii. Plaintiff Marguerite Potter Fails to State a Claim for Violation of the Automatic Stay Against the Private Defendants

We start with the Private Defendants first because, unlike the State Defendants, they do not invoke the doctrine of sovereign immunity. The Private Defendants are Bruce J. Duke, George and Donna Loose, Douglas Grant and Landis Title Corp., and Vitality Group, LLC.

Plaintiff Marguerite Potter alleges that "an-out-of-state Trustee hired counsel in the state of New Jersey to institute a state court case . . . to acquire possession of plaintiff Kevin Potter former deed residence from plaintiff Delmarva Enterprises." She further allege on October 20, 2011, all Defendants "knowingly took part, conspired, aided and abetted, the willfully violating of Marguerite Potter's automatic stay rights" by vandalizing her motor home, its contents, and her motor vehicle.

Defendants lodge a whole host of arguments against Plaintiffs' Complaint. Bruce J. Duke and George and Donna Loose argue that Plaintiff's claim for violation of the automatic stay should be dismissed because it is nothing more than conclusory allegations. Likewise, they contend they did not have knowledge of the automatic stay because they were not listed as creditors in Marguerite Potter's mailing matrix. Defendants Douglas Grant and Landis Title Corp. argue they could not have violated the automatic stay because they were not involved in the case until after Marguerite Potter's bankruptcy petition was dismissed. We interpret Defendants' arguments as attacking the first and second elements required to prove a claim under § 362(k)—whether a violation of the stay occurred, and whether it was willful.

Plaintiff's claim fails on the first element. First, Marguerite Potter's allegation that all Defendants "knowingly took part, conspired, aided and abetted, the willfully violating of Marguerite Potter's automatic stay rights" is a mere legal conclusion and, as such, is not entitled to the assumption of truth. This leaves us with the "nub" of her allegations—that Defendants vandalized her motor home, its contents, and her motor vehicle. We find these allegations unavailing. The Supreme Court in *Ashcroft v. Iqbal* reasoned that "determining whether a complaint states a plausible claim for relief will . . . be a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Drawing on this common sense, we find that Plaintiff's claim does not plausible state a claim for relief in light of the Florida Bankruptcy Court's order for Plaintiff to vacate the premises and the pending ejectment action in the Superior Court of New Jersey. Plaintiff has not averred facts which explain why mere civilians—like George and Donna Loose and Bruce J. Duke—would accompany law enforcement officers to carry out a federally and state sanctioned eviction. Nor has plaintiff alleged facts showing a debtor-creditor relationship

16

between any of these Private Defendants and her. This Court cannot draw a reasonable inference from these conclusory allegations that civilians accompanied law enforcement officers to carry out an eviction.

*Twombly* is illustrative of this point. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 567 (2007). There the Supreme Court concluded the complaint did not plausibly suggest an illicit agreement under the antitrust laws because while parallel conduct was consistent with an unlawful agreement, it was far more likely explained by lawful, unchoreographed free-market behavior. *Id.* The same reasoning applies here. While the seizure of personal property is consistent with a violation of the automatic stay, it is far more likely explained by the actions of the Cumberland County Sheriff's Department carrying out a lawful eviction. This claim is even less plausible in light of New Jersey Court Rule 6:7-1(f). It provides "writs of possession in summary actions for the possession of real property filed pursuant to R. 6:1-2(a)(4) shall be issued to the *sheriff*." New Jersey Court Rule 6:7-1(f) (emphasis added). R. 6:1-2(a)(4) declares that summary actions for the possession of real property pursuant to N.J.S.A. 2A:35-1 et seq.,[5] where the *defendant has no colorable claim of title or possession* are cognizable claims heard in the Superior Court. New Jersey Court Rule 6:1-2(a)(4) (emphasis added). Thus, given the Florida Bankruptcy Court's order and the pending ejectment action in the Superior Court of New Jersey, it is essentially a foregone conclusion that the "armed home/business invasion" was a scheduled eviction carried out by the Cumberland County Sheriff's Department, not the Private Defendants.

Moreover, Plaintiff cannot show that Defendants Douglas Grant and Landis Title Corp violated the automatic stay. 11 U.S.C. § 362(c) governs the termination of an automatic stay.

---

[5] N.J.S.A. 2A:35-1 states "Any person claiming the right of possession of real property in the *possession of another*, or claiming title to such real property, shall be entitled to have his rights determined in an action in the Superior Court."

Under § 362(c)(2)(B), the automatic stay is terminated at the time the case is dismissed, if that occurs before the case is closed or discharged. 11 U.S.C. § 362(c)(2)(B). Here, Marguerite Potter's automatic stay was terminated on November 23, 2011, because that is when the Honorable Judge Burns of the Bankruptcy Court dismissed her case. Defendants Douglas Grant and Landis Title Corp were not involved with the Buckshutem Property until December 1, 2011—days after the termination of the automatic stay.[6] As such, it is axiomatic that they could not have violated the automatic stay. Therefore, Plaintiff's claim the Private Defendants violated the automatic stay fails to state a claim on which relief may be granted.

### iii.  Allegations Against State Defendants

Defendants' Cumberland County Prosecutor's Office and Sheriff's Department (i.e., the State Defendants) argue Plaintiff's claim for violation of the automatic stay must be dismissed because they are entitled to sovereign immunity under the 11th Amendment. More specifically, Defendants contend they are "arms of the state" and thus immune from suit for damages. We need not reach this issue because even if they were "arms of the state," the argument they are immune from suit for damages is foreclosed by the Supreme Court's decision in *Katz*. *Central Va. Community College v. Katz*, 546 U.S. 356, 362 (2006).

### 1.  Central Va. Community College v. Katz

In its seminal decision *Central Va. Community College v. Katz*, the Supreme Court held that in ratifying the Bankruptcy Clause, the States acquiesced in subordination of whatever

---

[6] It is well settled that a "court may take judicial notice of the docket entries in a case and the contents of the bankruptcy schedules to determine the timing and status of case events as well as facts not reasonably in dispute." *In re Stambaugh*, 533 B.R. 449, 454 (Bankr. M.D. Pa. 2015). Likewise, a court may take judicial notice of public records, such as publicly recorded deeds. *Gagliardi v. Kratzenberg*, 188 F. App'x 86, 89 (3d Cir. 2006). To prevent a substantial miscarriage of justice, we take judicial notice of the docket entries in Marguerite Potter's bankruptcy case (Pet.11-40237) and the publicly recorded deed executed by Robert Altman to transfer title of the Buckshutem property to Vitality Group, LLC.

sovereign immunity they might overwise have asserted in proceedings necessary to effectuate in rem jurisdiction of the bankruptcy courts. *Central Va. Community College v. Katz*, 546 U.S. 356, 362 (2006). In other words, the Bankruptcy Clause itself abrogates the States sovereign immunity defense in proceedings ancillary to a bankruptcy court's exercise of in rem jurisdiction. The proceeding in Katz was an action brought by the chapter 11 trustee "to avoid and recover preferential transfers made by the debtor when it was insolvent." *Id.* at 360. The Supreme Court concluded that it did not need to decide whether the preference avoidance proceeding itself was an *in rem* action because it was at the very least "ancillary to the bankruptcy courts' *in rem* jurisdiction." *Id.* at 372–73.

Thus, the question becomes, is the claim for violation of the automatic stay at least ancillary to the bankruptcy court's exercise of in rem jurisdiction. The answer is plainly yes. *See In re Odom*, 571 B.R. 687, 696 (Bankr. E.D. Pa. 2017) (noting a "proceeding involving the enforcement of the automatic stay constitutes a 'critical feature' in the exercise of in rem bankruptcy jurisdiction" and concluding that even if the local agency could invoke sovereign immunity, under Katz it would not be a defense to an action under 11 U.S.C. § 362(k)); *In re Omine*, 485 F.3d 1305, 1314 (11th Cir. 2007), withdrawn pursuant to settlement, No. 06-11655-II, 2007 WL 6813797 (11th Cir. June 26, 2007) (agreeing with the District Court that actions to force a creditor to honor the automatic stay are the types of "proceedings necessary to effectuate the in rem jurisdiction of the bankruptcy court," and therefore the Florida Department of Revenue could not assert sovereign immunity.).

Like the action to recover money form alleged preferential transfers in *Katz*, Plaintiff's action for violation of the automatic stay is a proceeding ancillary to the discharge of a debtor's debt. Black's law dictionary defines "ancillary" as "supplementary; subordinate." ANCILLARY,

Black's Law Dictionary (11th ed. 2019). The automatic stay is a supplement to the Bankruptcy Court's exercise of in rem jurisdiction because it preserves "the status quo between the debtor and [his] creditors, thereby affording the parties and the Court an opportunity to appropriately resolve competing economic interests in an orderly and effective way." *Taylor v. Slick*, 178 F.3d 698, 702 (3d Cir. 1999). Put differently, a violation of the automatic stay directly interferes with the exercise of exclusive jurisdiction over all the debtor's property and the equitable distribution of that property among the debtor's creditors. Thus, while claims for damages based on violation of the automatic stay resemble traditional money damage lawsuits in form, their function is to facilitate the *in rem* proceedings which form the foundation of bankruptcy. As such, the doctrine of sovereign immunity does not apply with respect to the claim for violation of the automatic stay.

We must now determine whether Plaintiff Marguerite Potter states a claim for relief for violation of the automatic stay.

### 2.   Plaintiff Marguerite Potter Pled Sufficient Facts to State a Claim for Relief for Violation of the Automatic Stay

Plaintiff alleges Defendants violated the automatic stay because on October 20, 2011— the day after her Chapter 13 bankruptcy petition was filed—Defendants vandalized her motor home, its contents, and her motor vehicle. (Doc. No. 69, Am. Compl. at ¶ 66(d), (e)). It is further alleged that "Kevin Potter also witnessed defendant Jon M. Reilly without warrant, cause or legal justification pilfering and looting plaintiffs personal property from their office." (Doc. No. 69, Am. Compl. at ¶ 72). These factual allegations are entitled to a presumption of truth and are enough to show that the automatic stay, which was generated on October 19, may have been violated by the seizure of Marguerite Potter's personal property on October 20. To the extent that

Plaintiff alleges that Defendants conspired to violate or aided and abetted in violation of the automatic stay, this can be disregarded as a mere legal conclusion.

While we recognize the State Defendants may have had legal authority to so act, and that they are not "creditors," this does not provide Defendants with a cloak of immunity. In *In re Dennis*, the Court concluded that the action of the mortgagee and *the sheriff* in continuing with a sheriff's sale after the debtor has filed her Chapter 13 bankruptcy petition was a violation of the automatic stay. 14 B.R. 125, 127 (Bankr. E.D. Pa. 1981) (emphasis added). However, the Court found the sheriff and the mortgagee had no notice of the pending bankruptcy proceeding so they could not be held in contempt for their actions. *Id.* This case elucidates how broadly courts construe the operation of the automatic stay and reaffirms our conclusion that Plaintiff has pled enough facts satisfy the first element under § 362(k).

Moreover, as pled, Plaintiff has alleged sufficient facts for this Court to infer a willful violation. Plaintiff alleges that immediately after filing the Chapter 13 bankruptcy petition on October 19, 2011 "all defendants received notice of plaintiff Marguerite Potter's Chapter 13 petition via hand-delivery or by way of electronic notice on the same day it was filed." (Doc No. 69, Am. Compl. at ¶ 54). Likewise, Plaintiff alleges the following morning, she filed a copy of her bankruptcy petition with the Clerk's Office of the Superior Court of New Jersey. (Doc No. 69, Am. Compl. at ¶ 16). Taking these factual allegations as true, they are sufficient to put Defendants on notice that Plaintiff Marguerite Potter had a pending bankruptcy case and thus knowledge of the automatic stay. Even if we were to take judicial notice of the mailing matrix as the Defendants request, it would still not remove the impediment imposed by Plaintiff's allegation that "all defendants received notice of plaintiff Marguerite Potter's Chapter 12 petition via hand-delivery."

Lastly, Plaintiff has alleged that violation of the automatic stay has resulted in actual damages. Plaintiff alleges that Defendants "theft/vandalism" of Marguerite Potter's "motor home and its contents" and "motor vehicle" has caused damages in excess of $125,000. (Doc. No. 69, Amended Compl. ¶¶ 66(d), (e)). Thus, Plaintiff Marguerite Potter's claim for violation of the automatic stay with respect to her personal property survives the State Defendants' Motions to Dismiss.

### 3.   Defendants Motion to Retroactive Annul the Automatic Stay is Referred to the Bankruptcy Court

Defendants Cumberland County Prosecutor's Office and Sheriff's Department ask us to retroactively annul the automatic stay and thereby ratify their actions. While we may have jurisdiction to grant such relief,[7] and it is likely that such relief is appropriate, referral of this matter to the Bankruptcy Court will best serve the interest of judicial efficiency. *Segal v. Friedman*, No. CV 12-3663, 2016 WL 7209886, at *3 (E.D. Pa. Dec. 13, 2016). Especially in light of the fact that, as is set forth below, only Plaintiff Marguerite Potter's claim for violation of the automatic stay with respect to her personal property against the State Defendants survives the motions to dismiss.

Under 28 U.S.C. § 157(a), a District Court may refer any or all proceedings related to a case under Title 11 to the Bankruptcy Court for the District. In the District of New Jersey, the referral of cases to the Bankruptcy Court is governed by the Standing Order of Reference [dated

---

[7] The Third Circuit concluded that a District Court has jurisdiction to entertain a claim for violations of an automatic stay under § 362(k) because such a claim is a "case" under Title 11. *In re Healthcare Real Estate Partners, LLC,* 941 F.3d 64, 70–71 (3d Cir. 2019*).* The logical corollary of this conclusion is that a District Court has jurisdiction to grant appropriate relief, including the termination, annulment, or modification of the automatic stay. In fact, the Third Circuit intimated this was a concomitant right in *Potter v. Newkirk*, 802 F. App'x 696, 701 (3d Cir. 2020). It noted that "if the bankruptcy petition was filed in bad faith . . . *a* court could 'retroactively ratify violations of the automatic stay by annulling the stay.'" *Id.* (emphasis added). Thus, it seems to have left open the possibility of District Courts entertaining motions to retroactively annul an automatic stay. Indeed, such a ruling comports with the plain text of the 28 U.S.C. § 1334(a) and (b).

July 23, 1984] as amended September 18, 2012. It provides "[a]ny or all cases under Title 11 of the United State Code and any or all proceedings arising under Title 11 of the United States Code . . . shall be referred to the bankruptcy judges for the district." Standing Order of Reference, N.J. (July 23, 1984) amended September 18, 2012.

A motion to retroactively annul an automatic stay is a "core" proceeding, and thus may be referred to the Bankruptcy Court as a "proceeding arising under Title 11." 28 U.S.C. § 157(b)(2)(G). Moreover, referral is also appropriate given that retroactive annulment of an automatic stay falls within the province of the Bankruptcy Court's expertise and it is familiar with the parties. The Bankruptcy Court presided over Marguerite Potter's Chapter 13 bankruptcy petition and the subsequent issue regarding the withdrawal of attorney Bruce J. Duke. Even the Plaintiffs have sought to enforce the Standing Order of Reference so their case would be referred to the Bankruptcy Court. Accordingly, this Court finds the motion to retroactively annul the automatic stay is best suited for determination in the Bankruptcy Court and will refer it to that Court.

### D.  Remaining Tort Claims

Plaintiffs remaining causes of action are: (1) conversion; (2) trespass; (3) tortious interference with contractual relations; (4) unlawful interference with prospective economic advantage; and (5) malicious prosecution. As it relates to the State Defendants, the claims are barred by the statute of limitations under the New Jersey Tort Claims Act. With respect to the Private Defendants, they fail to state a claim on which relief can be granted.

### i.  New Jersey Tort Claims Act

State Defendants argue that Plaintiffs' tort claims are barred by the two-year statute of limitations. Plaintiffs argue the State Defendants are not immune from liability under the NJTCA because they were acting outside the scope of their employment. We agree with Defendants.

The New Jersey Tort Claims Act provides "a claim relating to a cause of action . . . for injury or damage to . . .  property shall be presented . . . not later than the 90th day after accrual of the cause of action." N.J. Stat. Ann. § 59:8-8. It goes on to provide that a claimant "shall be forever barred from recovering against a public entity or public employee if . . . two years have elapsed since the accrual of the claim." *Id.*

It cannot be gainsaid that the Cumberland County Prosecutor's Office, assistant prosecutor Jon Reilly, and the Sheriff's Department are public entities and public employees within the meaning of the statute. A "public entity" includes "the State, and any county, municipality, district, public authority, public agency, and any other political subdivision or public body in the State." N.J.S.A. 59:1–3. A "public employee" is simply defined as "an employee of a public entity." The Cumberland *County* Prosecutor's Office and the Cumberland *County* Sheriff's Department fall within the purview of this statute. So too does Jon Reilly, the former assistant prosecutor for the Cumberland County Prosecutor's Office. As such, Plaintiffs tort claims are governed by the NJTCA.

Plaintiffs filed the complaint well outside the two-year statute of limitations period. Kevin Potter's claim for malicious prosecution accrued on the date that his prosecution was allegedly resolved in his favor. *Muller Fuel Oil Co. v. Ins. Co. of N. Am.*, 95 N.J. Super. 564, 577 (App. Div. 1967) (concluding the statute of limitations does not begin to run for a suit for malicious prosecution until the date of a favorable termination in the criminal proceeding). According to the complaint, he received a favorable termination in the criminal proceeding

against him on September 17, 2012 when the case was dismissed with prejudice. (Doc No. 69, Am. Compl. at ¶ 128). For the remaining tort claims, the accrual date was October 20, 2011—the day of the alleged "armed home/business invasion." Thus, when plaintiffs filed the complaint on October 17, 2017—almost six years after the alleged raid and five years after the alleged favorable termination—they failed to comply with the applicable statute of limitations under the NJTCA. As such, Plaintiffs' tort claims are dismissed with prejudice.

Plaintiffs' contention that they are suing Defendants in their "individual capacity" is unavailing. The NJTCA extends its protections to officials without regard to whether the suit is brought against the official in his official or individual capacity. *Fanor v. Univ. Hosp. – UMDNJ*, No. CV 16-320, 2016 WL 4728104, at *3 n.3 (D.N.J. Sept. 9, 2016). While Plaintiffs' suit against the Defendants in their "individual capacities" may have had implications under sovereign immunity, it is does not under the NJTCA. Thus, Plaintiffs' tort claims must be dismissed.

### ii.  Plaintiffs Fail to State a Claim Against Private Defendants for the Remaining Tort Claims

We will quickly dispense with Plaintiffs' claims that the Private Defendants committed conversion, trespass, tortious interference with contractual relations, unlawful interference with prospective economic advantage, malicious prosecution.

All these claims are premised on the underlying eviction. Because we already concluded that Plaintiffs failed to allege enough facts to plausibly state a claim against these Defendants with respect to the "armed home/business invasion," it follows that Defendants could not have committed these torts either. In short, Plaintiffs' claims are all based on the same set of underlying facts and if one claim fails, they all fail. Accordingly, Plaintiffs' tort claims against the Private Defendants are dismissed.

### iii.   Marguerite Potter's Breach of Contract Claims Are Dismissed

Plaintiffs allege Defendant Bruce J. Duke breached his contract with Marguerite Potter by "knowingly taking part, conspiring, [and] aiding and abetting [in] the [willful] violation of Marguerite Potter's automatic stay rights" and the remaining tort claims. As far as this Court can tell, Bruce J. Duke argues the claim for breach of contract should be dismissed because the allegations are conclusory and he did what he was retained to do—file a bankruptcy petition on behalf of Marguerite Potter. Thus, it seems Defendant's argument is that Plaintiff's claim for breach of contract should be dismissed because the claim is not plausible on its face. We agree.

To establish a claim for breach of contract, a plaintiff must show: (1) the parties entered into a contract containing certain terms; (2) the plaintiffs did what the contract required them to do; (3) the defendant did not do what the contract required him to do; and (4) the defendant's breach or failure to adhere to the contract terms caused a loss to plaintiff. *Globe Motor Co. v. Igdalev*, 225 N.J. 469, 482, 139 A.3d 57, 64 (2016).  Under New Jersey law, a "complaint alleging breach of contract must, at a minimum, identify the contracts and provisions breached." *Eprotec Pres., Inc. v. Engineered Materials, Inc*., No. 10-5097 (DRD), 2011 U.S. Dist. LEXIS 24231 (D.N.J. Mar. 9, 2011). Failure to allege the specific provisions of the contract breached is grounds for dismissal. *Skypala v. Mortgage Electronic Registration Systems*, Inc., 655 F.Supp.2d 451, 459 (D.N.J. 2009).

From the face of the complaint, Plaintiff has not identified the contract or provisions Duke J. Bruce has breached. Instead, Plaintiff lodges conclusory allegations against Defendant contending he breached the contract by "the willfully violation of Marguerite Potter's automatic stay rights, . . . the conversion of plaintiff's estates, . . .  [and] the tortious interference with plaintiff's residential and commercial leases." These are mere legal conclusions and are not

26

entitled to a presumption of truth. Without more, the deficiencies in Plaintiff's complaint are fatal and her claim for breach of contract will be dismissed.

To the extent that we could construe the Complaint as alleging the terms of a contract between Plaintiff Marguerite Potter and Defendant Bruce J. Duke, Plaintiff has effectively pled herself out of the case. Plaintiff alleges that in response to the impending ejectment action, she "had an extended meeting with defendant Bruce Duke Esp. and hired him . . . to protect her estate and other companion legal rights." (Doc No. 69, Am. Compl. at ¶ 50). She further alleges that at the conclusion of this meeting, Defendant Bruce J. Duke advised her "that he would file an emergent Chapter 13 petition 'immediately' to protect her estate." (*Id.* at 51). The crucial factual allegation by Plaintiff is that "two hours thereafter defendant Bruce J. Duke file a chapter 13 petition on behalf of plaintiff Marguerite Potter estate with the U.S. Bankruptcy Court, Camden, New Jersey." (*Id.*). These allegations show Plaintiff Marguerite Potter entered into an attorney-client relationship for the purported purpose of protecting her estate, Defendant Bruce J. Duke promised he would file a Chapter 13 bankruptcy on her behalf to protect her estate, and Defendant did so approximately two hours after the meeting. In other words, Plaintiff's allegations show Defendant Bruce J. Duke performed as promised. Even liberally construing Plaintiff's complaint, we discern no factual allegations that come even close to suggesting a breach of contract. Accordingly, by Plaintiff's own admissions, Defendant Bruce J. Duke has not breached a contract, and her claim is therefore dismissed.

### E.  Conclusion

For the reasons contained herein, the Plaintiffs' Motion to Strike and Impose Pre-Filing Injunctions is denied, Defendants' Motions to Dismiss are granted in part and denied in part, and

Defendants' Motions to Retroactively Annul the Automatic Stay are referred to the Bankruptcy Court. An accompanying Order shall issue.